IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOUGLAS A. KLING,

    Plaintiff,

v.

JAYSON GARCIA, LOREN SNEDEKER, and
KANSAS DEPARTMENT OF
CORRECTIONS,

    Defendants.

Case No. 16-3028

## MEMORANDUM & ORDER

This matter comes before the court upon defendants Jayson Garcia and Loren Snedeker's Motion for Summary Judgment (Doc. 22). For the reasons explained below, defendants' motion is granted.

**I.    Background**

Plaintiff Douglas A. Kling filed an amended complaint on August 23, 2016 (Doc. 5). Plaintiff used the form Civil Rights Complaint for claims brought pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant Garcia violated his Eighth Amendment right to be free from cruel and unusual punishment, by attacking plaintiff on March 26, 2014, "pushing, punching and pulling Plaintiff's hair out . . . in the clinic at HCF" and plaintiff claims there are witnesses and video footage of the incident. (Doc. 5, at 3). Plaintiff claims that his right to due process under the Fourth, Fifth, and Fourteenth Amendments were violated when defendant Garcia issued a disciplinary report after the incident, resulting in a disciplinary hearing, over which defendant Snedeker presided and required plaintiff to pay a fine. (Id.) Plaintiff claims he was not given notice and was not present for his hearing. (Id. at 2.)

Plaintiff claims that he has filed multiple forms seeking relief from the actions he complains of and states that he has exhausted the disciplinary appeal process. He claims $5,274 in actual damages and $150,000 in exemplary damages from defendant Garcia; $254 in actual and $15,000 in exemplary damages from defendant Snedeker; and $1 in nominal damages for each violation. He requests a jury trial.

**II.     Legal Standard**

   A.     Pro Se Litigants

Where a plaintiff proceeds pro se, the court construes his filings liberally and holds them to less stringent standards than pleadings filed by lawyers. *Barnett v. Corr. Corp of Am.*, 441 F. App'x 600, 601 (10th Cir. 2011). Pro se plaintiffs are nevertheless required to follow the Federal and Local Rules of practice and the court does not assume the role of advocating for plaintiff. *United States v. Porath*, 553 F. App'x 802, 803 (10th Cir. 2014).

   B.     Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact." *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))). Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue

for trial." *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him. Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). Summary judgment is not a "disfavored procedural shortcut" —it is an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

B.  Summary Judgment Briefing Procedure

As required by the local rules, defendants set forth a statement of uncontroverted facts, separately numbered and referring with particularity to those portions of the record upon which each statement relies. D. Kan. Rule 56.1(a). The rules provide that all facts set forth in such a statement are deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of the opposing party. The responding party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. Rule 56.1(b)(1). The Rules further provide that if the nonmoving party "relies on any facts not contained in the movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record." Rule 56.1(b)(2). "All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings,

depositions, answers to interrogatories, and responses to requests for admissions." Rule 56.1(d). Plaintiff, as a pro se party, was provided a full copy of these rules as required by 56.1(f). (Doc. 24.)

Plaintiff generally does not controvert defendants' statements in numbered paragraphs. He provides his own set of two uncontroverted facts, only one of which cites to record authority. Because he did not specifically controvert defendants' factual allegations, those allegations are deemed admitted for purposes of summary judgment. "[I]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).

## II. Uncontroverted Facts

Plaintiff filed this case on January 29, 2016, while he was incarcerated at Hutchinson Correctional Facility ("HCF"). Defendant Garcia was a corrections officer with the Kansas Department of Corrections ("KDOC") and Defendant Snedeker was a Corrections Specialist II at HCF, working as a hearing officer on the date of plaintiff's disciplinary hearing. On March 26, 2014, defendant Garcia was working the overnight shift providing security in the central unit clinic. Plaintiff was housed in one of three isolation cells in the central unit clinic. Other inmates were also in the infirmary at that location.

### A. The March 26, 2014 Altercation

Defendant Garcia's affidavit states "that around 2:15 a.m. [plaintiff] began kicking loudly on the metal door of the cell, causing a great deal of noise, disrupting the quiet time of the other sleeping inmates" because he was angry that he had not received a grievance form as requested. (Doc 23, at 3.) Duane Denton, a registered nurse who was also present that night, confirmed that plaintiff "became[] loud and belligerent, apparently because he had asked someone for a grievance form and hadn't

received it yet. . . about 2:15 a.m. [he was] shouting and kicking the cell door.  He was making a lot of noise." (Id.)

Defendant Garcia claims that he went to plaintiff's cell to attempt to calm him and de-escalate the situation.  He opened the door to talk to plaintiff face-to-face because he could not hear him well through the door.  Plaintiff demanded to see the captain or lieutenant immediately and defendant Garcia told him that was not an option.  Plaintiff then tried to exit his cell and defendant Garcia pushed him back in and told him to stay in the cell.  Plaintiff made a second attempt to exit his cell and was pushed back in and told to remain.  On his third attempt, plaintiff punched defendant Garcia in the face, defendant Garcia's affidavit states that he "tried to grab and control Mr. Kling as [they] fell onto [plaintiff's] bed.  [Plaintiff] continued to strike [defendant Garcia] and [defendant Garcia] threw some blows in self-defense." (Id. at 4).  Plaintiff charged defendant Garcia again and pushed them both in to the hallway, where defendant Garcia was able to hold plaintiff and pin him until a response team arrived around 2:20 a.m.  These events are confirmed by Mr. Denton's affidavit which states that he did not hear defendant Garcia "say or do anything that should have angered or offended Mr. Kling" and that he watched the security camera during these events and saw plaintiff charge defendant Garcia before they went out of camera range.  (Id. at 3–4.)  Denton saw defendant Garcia pinning plaintiff to the wall until help arrived.  Once the response team arrived, plaintiff was taken to segregation.

Due to the injuries he received during the incident, defendant Garcia was unable to return to work until April 7, 2014.  Mr. Denton's affidavit states that plaintiff had no obvious injuries except that a few strands of his long hair were on the ground.  "Officer Garcia was bleeding from his face and had several abrasions on his face and arms." (Id. at 5.)  Another nurse's progress note, clearing plaintiff to be held in segregation from 3:00 a.m. that morning, noted that plaintiff had small abrasions on his left ear lobe, right elbow and forearm, left knee, and that plaintiff was complaining of right

lower calf pain. (Id. at 5–6.) The note stated that there were some long strands of hair on the floor but since plaintiff is balding it was hard to tell where they came from. He did not have any open areas or bleeding at that time.

### B. The Disciplinary Hearing

Plaintiff's disciplinary hearing on charges of battery of a correctional officer and for disobeying defendant Garcia's orders was initially scheduled for April 23, 2014, but was continued until May 12, 2014, due to defendant Garcia's medical leave.

Defendant Snedeker's affidavit states that the disciplinary report detailing the incident shows that the amount of restitution was likely added at a date after the report was initially written. He states that this is not unusual, because the amount of restitution may not be known at the time the report is first written, as in this case. The restitution in this case was for defendant Garcia's glasses and as soon as the replacement cost of his glasses was known, that information was added to the disciplinary report. (Doc. 11, at 11.) Defendant Snedeker states that it is his normal practice to inform an inmate early in the hearing process if restitution is being sought. But in this case, plaintiff "became argumentative at the very first of the hearing process when [defendant Snedeker] was trying to explain the form to him that contained that information." (Doc. 11-2, at 1.)

At the latest, the restitution amount was known and included on the disciplinary report by the April hearing date and was added to the summons for the May 12th hearing. Plaintiff was not allowed to remain at the May hearing because his own behavior was so disruptive that he had to be removed and have staff appointed to represent him.

### III. Discussion

As an initial matter, it is not clear whether plaintiff is asserting claims against the individual defendants in their individual or official capacities. Therefore, the court will address the issues as if both individual and official capacity claims are being made.

### A.     Individual Capacity Claims

Qualified immunity is a defense to individual capacity claims. "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A right is not "clearly established" under the law "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* This means that "existing precedent must have placed the statutory or constitutional question confronted by the official 'beyond debate.'" *Id.* Qualified immunity protects public employees from the burdens of litigation as well as liability. *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016).

When a defendant asserts the defense of qualified immunity, the burden is on plaintiff to show "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* If plaintiff fails to prove either part of this test, the defendant is entitled to their defense on the basis of qualified immunity.

A plaintiff may show that a right is clearly established by citing either an on point United States Supreme Court or Tenth Circuit Court of Appeals case, or by showing that the weight of authority from other circuits supports their position. *Id.* But a case on point is not always required. The Tenth Circuit has also adopted a sliding-scale analysis for which the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to

clearly establish the violation." *Id.* (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Courts generally accept a plaintiff's version of the facts as true for purposes of qualified immunity, but where the case has progressed to the summary judgment stage, the plaintiff's facts must be supported by the record. *Id.* at 1136.

### A. Claims against defendant Garcia

All plaintiff offers to oppose defendant Garcia's qualified immunity argument is that: "Garcia allegedly maliciously pushed, punched and violently ripped hair from Plaintiff's scalp. This violates clearly established law that Garcia was aware of and should not be shielded by immunity." (Doc. 29, at 2.) Plaintiff does not provide any case law or other authority explaining what law defendant Garcia allegedly violated or supporting a claim that such law was clearly established on March 26, 2014. Plaintiff has not shown that a reasonable officer in defendant Garcia's position should have acted any differently in attempting to deal with plaintiff's disruptive and eventually violent behavior. To the contrary, according to the record evidence, several witnesses stated that defendant Garcia acted appropriately, that plaintiff was the aggressor, and that defendant Garcia's actions were necessary to restrain plaintiff until a response team arrived.

The court has reviewed the video evidence of the incident and finds that it conforms with the witnesses' reports of the incident. Plaintiff does not explain any details beyond his conclusory assertions that he was pushed, punched, and his hair was ripped out. These things did apparently occur, but only as a result of plaintiff's inappropriate and violent behavior. Plaintiff has not met his burden to show that his clearly established constitutional rights were violated by defendant Garcia. Therefore, defendant Garcia in his individual capacity is entitled to summary judgment based on qualified immunity.

### B.     Claims against defendant Snedecker

Plaintiff's argument against summary judgment with regards to defendant Snedecker is similar. Plaintiff provides that "Snedeker was a hearing officer and was award (sic) of the due process rights that should have been afforded to the Plaintiff and disregarded them anyways so he should not be shielded by immunity." (Id.)  Plaintiff does cite *Wolff v. McDonnell*, 418 U.S. 539 (1974), but does not explain how this case supports his argument against qualified immunity.

Presumably, plaintiff is citing the case for the Supreme Court's discussion explaining that "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime." *Id.* at 555.  Prisoners maintain a right of access to courts and the protections of due process, among other constitutionally guaranteed rights and freedoms.  However, the court also noted that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* at 556.  The Court noted that "the touchstone of due process is protection of the individual against arbitrary action of government." *Id.* at 558.

*Wolff* also sets out the minimum requirements for procedural due process to be satisfied: (1) advance written notice of the claimed violation; (2) the opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 563–573.

Plaintiff does not explain what constitutional right he alleges defendant Snedeker violated.  He does not explain whether the weight of precedent supports his theory that any such law was clearly established in April or May 2014 when the alleged violation would have taken place.  From the pleadings and the briefing on this matter, the court understands that plaintiff is not pleased that he was

forced to pay restitution to replace defendant Garcia's glasses after they were damaged or broken in the altercation. He is also not pleased that he was not allowed to remain at his hearing. But plaintiff failed to respond to defendants' statements of uncontroverted fact and he does not otherwise explain how these circumstances violated his constitutional right to due process.

Because plaintiff did not contest any of defendants' uncontroverted facts, he admits that he was provided notice that restitution was being sought and in what amount, at the latest, by the time he received a summons for the April 23, 2014 hearing, which was later continued until May 12, 2014. This would have provided, at a minimum, two weeks of notice. Plaintiff was provided notice of the restitution request.

Plaintiff also admits due to failure to contest defendants' uncontroverted facts, that he "became argumentative at the very first of the hearing process when [defendant Snedeker] was trying to explain the form to [plaintiff] that contained [information about the restitution sought]." (Doc. 23, at 7.) He admits that defendant Snedeker "warned [plaintiff] multiple times that if he didn't quit arguing [the hearing would be held] without him, which was what ultimately happened." (Id.) Staff was appointed to participate on plaintiff's behalf. Again, plaintiff fails to provide case law that establishes that he had a clearly established constitutional right in April and May of 2014. He also fails to show that any such right was violated by defendant Snedeker. Therefore, defendant Snedeker in his individual capacity is entitled to qualified immunity and the motion to dismiss on his behalf is granted.

### B. Official Capacity Claims

Defendants also claim Eleventh Amendment immunity. The state is entitled to immunity under the Eleventh Amendment unless immunity is waived by the state or abrogated by Congress. *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014). Eleventh Amendment immunity applies to damage suits brought against state officials in their official capacities. Kansas has not waived its immunity and

Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983.  *Id.*  Because defendants are employees of the KDOC, Eleventh Amendment immunity applies to plaintiff's official-capacity claims for damages.  Plaintiff has only sought money damages in this suit.  Therefore defendants are entitled to summary judgment on all official capacity claims for damages.  This case is dismissed against individual defendants Garcia and Snedeker.

**IT IS THEREFORE ORDERED** that defendants Jayson Garcia and Loren Snedeker's Motion for Summary Judgment (Doc. 22) is granted.

Dated January 3, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**